UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14333-CIV-MARTINEZ/LYNCH

JOHN J. GERARDI,

    Plaintiff,

v.

AETNA LIFE INS. CO.,

    Defendant.

_____/



## ORDER ON PLAINTIFF'S MOTION TO COMPEL (DE 13)

**THIS CAUSE** comes before this Court upon the above Motion. Having reviewed the Motion, Response, and Reply, this Court finds as follows:

### BACKGROUND

1.    The Plaintiff worked as a fleet sales manager and salesman for a nationwide car dealership owner. As a benefit of employment the Plaintiff participated in a Long Term Disability Benefit Plan. The Defendant is both the Plan's insurer and administrator. The Plan insured the Plaintiff for 60% of his income should he become disabled (less Social Security Disability benefits).

2.    In April 2015 the Plaintiff was diagnosed with a pelvic fracture. The resulting pain impaired his ability to do his job. Thereafter rheumatoid arthritis and severe osteopenia

also were diagnosed. The Plaintiff filed a claim against the Plan on August 18, 2015.

    3.   On September 22, 2015 an MRI was taken of the Plaintiff's brain. It showed signs of a past stroke event.

    4.   The Defendant initially denied the claim on September 24, 2015. That initial denial letter gave the Plaintiff the choice of either submitting additional information for consideration or to appeal. The Plaintiff chose to submit additional information. The Defendant again denied the claim on November 10, 2015 (with the 180-day clock to appeal still running as of the date of the first adverse decision). Although his claim now ostensibly was in the appeal stage but before the Plaintiff filed that appeal, the Defendant considered newly added medical records, and the Defendant rendered a third denial decision on December 4, 2015. The Plaintiff again was not given 180 days from the date of that denial to appeal.

    5.   In the meantime---in between the first denial on September 24th and the second denial on November 10th---the Social Security Administration granted the Plaintiff's claim for Social Security disability benefits. The Plaintiff says that under the circumstances and the given time frame, he was unable to submit the SSA records to the Defendant in time for the appeal. (It appears however that the Defendant did have the SSA

records by time of the third denial. This Court does not discern from these pleadings that the Defendant excluded all SSA records from its final consideration.)

6. Despite the claim denial being back in the administrative appeal stage, the Defendant for a third time gathered new evidence. The Defendant extended the appeal in order to solicit a "specialty matched opinion". The Defendant solicited an opinion statement from a Dr. Frank Polanco. However is area of specialty, occupational medicine, did not directly match the areas of specialty of the treating and examining doctors of record. This preceded the third and final denial of December 4, 2015.

7. In addition to disputing on its merits the Defendant's finding that he is not disabled, the Plaintiff complains about certain irregularities in how the Defendant evaluated his claim. For example the Plaintiff complains about the claim manager's "unprovoked request to Aetna's vocational analyst" to reclassify his job from the "light" to "sedentary" exertional level and then to close the record against any further job duty classification inquiry. This occurred before the first denial decision. The Plaintiff also complains about the Defendant's solicitation of Dr. Polanco's opinion after its second denial. The essential nature of the Plaintiff's concern is that the

Defendant purposely sought out a doctor on whom it could rely to render an opinion to support the denial of his claim.

8.  The Plaintiff infers from these irregularities and the way in which his claim was handled that the Defendant was motived by conflict of interest and bias and acted in an arbitrary and capricious way. In other words the Plaintiff infers result-oriented decision-making toward denying his claim. The Plaintiff seeks discovery to explore the degree to which the Defendant's decision-making was improperly influenced and directed.

## LAW ANALYSIS

9.  Before addressing the parties' present discovery dispute, this Court considers the overarching standard of review that governs the case's merits. This Court draws the foregoing from the Supreme Court opinion of Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). As the Plan Administrator and the claim decider, the Defendant stands in the shoes of a trustee fiduciary and owes a special duty of loyalty to the Plaintiff, the Plan beneficiary, who either directly himself or by his employer on his behalf has been paying the premium for the disability insurance coverage that he now seeks.

10. This Court also assumes for present purposes that the Plan gave the Defendant discretionary authority to decide the

Plaintiff's disability claim. To this situation the case law applies a deferential standard of review. The standard of review defers in favor of upholding the plan administrator's decision unless no reasonable basis exists to support it, the plan administrator abused its discretion, or the plan administrator acted in an arbitrary and capricious way. This Court assumes for present purposes (albeit without specifically finding) that the denial of the Plaintiff's disability claim will be judged against this arbitrary and capricious standard of review.

11. The standard of review is deferential; it does not immunize the denial from all scrutiny. A plan administrator must consider the claim in a full and fair way. A plan administrator must comply with the fundamental requirement to deny a beneficiary's claim only after a thorough consideration of the complete record that was produced by a fair claim-evaluation process. See Melech v. Life Ins. Co. of No. Am., 739 F.3d 663 (11th Cir. 2014). This Court refers back to ERISA's goal of enhanced protection of an employee's benefits that Glenn noted. See also, 29 C.F.R. § 2560.503-1.

12. This brings the discussion around to the Defendant's reason for not producing discovery. The Defendant says that the deferential standard of review limits the scope of review to the Administrative Record. It already has produced that

Administrative Record. In its Response (DE 14) the Defendant reports that on November 14, 2016 it gave Plaintiff's counsel "[t]he complete administrative record of Gerardi's LTD claim (the "Administrative Record")." Any additional evidence, that is, any information that exists outside of that Administrative Record, is irrelevant, it maintains.

13. The Defendant's assertion is correct generally speaking. This Court does not review the merits of the claim denial---that is, the question of whether the Plaintiff meets the Plan's definition of disabled or not---against evidence of which the Plan Administrator did not have the benefit. This Court does not consider any new medical or non-medical evidence relevant to the state of the Plaintiff's health or his functional ability. The Plaintiff should have proffered all relevant evidence to the Plan Administrator by time of its final decision.

14. The Defendant refers only to the Administrative Record that it put together and sent to the Defendant. This Court clarifies that the scope of review is not limited to the Administrative Record, per se. It is limited to what evidence the Plan Administrator had before it at the time of decision-making and through the time of its final decision. This distinction is a subtle one. It does not automatically follow

that the proffered Administrative Record contains all of the evidence that the Plan Administrator had before it. At least to some degree the Plaintiff is allowed to test whether the Plan Administrator does indeed contain the complete body of evidence and information that the Plan Administrator had before it.

15.  Secondly there is an exception to the rule that limits the scope of judicial review to the evidence available to the plan administrator through the time of its final decision. A reviewing court may include in its consideration additional evidence to the extent it relates to conflict of interest and bias. Conflict of interest or bias---for example, a decision-making process purposely geared toward the denial of the claim---is a relevant factor. Indeed the Eleventh Circuit expressly includes it as a factor for consideration in its six-step standard of review. See Till v. Lincoln Life Ins. Co., 2017 WL 393257 (11th Cir. 2017) (setting forth its six-step Williams/Doyle analytical framework). As this Court notes above, a plan administrator wears the hat of a trustee when it uses its discretion to grant or deny a claim. A plan administrator has fiduciary obligations to conduct a full and fair review in terms of both how and why it denied a claim. Moreover the case law recognizes that there is at least a "structural" conflict of interest when the party who decides whether to grant a claim

also profits from denying a claim. The Defendant concedes that it decided the Plaintiff's claim under this type of structural conflict of interest.

16. This brings this analysis to the Defendant's other reason for not answering the Plaintiff's discovery requests. The Response implies that there is no need to explore the issue of structural conflict of interest any deeper. Case law generally accepts the presence of this structural conflict of interest. Case law notes the ameliorating effect of "the marketplace (and regulators)". The presence of a structural conflict of interest does not necessarily cause the plan administrator to lose the benefit of the deferential standard of review. See Glenn, supra.

17. While the presence of a structural conflict of interest may not change the nature of the standard of review and while the presence of any type of conflict of interest or bias may be just one factor to consider, that does not mean the issue can go no further. In some situations the degree of the conflict or the bias may be significant enough to call the plan administrator's decision into doubt. Case law says that the impact of conflict or bias factor will depend on the particular circumstances of each case. See Glenn, supra. See also, Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350 (11th Cir. 2011). To the extent the Defendant implies that Blankenship

caused a change in law, this Court disagrees. This Court construes Blankenship as confirming existing law that conflict of interest remains a factor for consideration, remains just one of many factors for consideration, and does not necessarily defeat the deferential standard of review.

18. Since it does not automatically follow that the administrative record that a defendant proffers into the record always will contain all evidence relevant to conflict of interest or bias, case law permits at least some discovery into this "collateral" subject even though it adds new evidence to the record before the Court. See Bloom v. Hartford Life & Accident Ins. Co., 558 Fed.Appx. 854 (11th Cir. 2014) (conceding that a plan administrator's deviation from its own manual can be evidence of arbitrary and capriciousness and can be relevant evidence even if not contained in the administrative record) and Howard v. Hartford Life & Accident Ins. Co., 563 Fed.Appx. 658 (11th Cir. 2014) (tacitly approving a court's consideration of conflict of interest evidence that is outside the administrative record). See also, Grams v. Am. Med. Instruments Holdings Long Term Disability Plan, 2009 WL 2926844 (M.D.Fla. 2009) and Self v. Prudential Ins. Co., 2010 WL 996503 (N.D.Fla. 2010). See generally, Emilia Quesada, Discovery in ERISA Cases?, 90 FLORIDA BAR JOURNAL 43 (February 2016).

19.  This Court disagrees with the Defendant that Blankenship renders the earlier decided Grams and Self opinions inapplicable here. Nor does this Court agree with the Defendant that the Blake v. Union Camp Int'l Paper opinion at 622 Fed.Appx. 853 (11th Cir. 2015) precludes discovery in this case. Blake is distinguishable from this case. Moreover Blake underscores how the degree to which conflict of interest impacts the analysis depends greatly on the facts unique to each case.

20.  This Court turns to the Defendant's third reason for resisting discovery. The Defendant argues that because this Court cannot evaluate the Plan Administrator's decision against new evidence, then any new evidence therefore is immaterial. The flaw with this argument is that judicial review of the Plan Administrator's decision is not the only possible outcome to this case. If, hypothetically speaking, this discovery shows shortcomings or incompleteness in the decision-making process, then in that event the judicial relief would be in the form of a remand back to the Plan Administrator. See Melech, supra. Or, if this discovery shows the Administrative Record to be incomplete and not to contain all the evidence and information that the Plan Administrator had before it, then the currently proffered Administrative Record can be supplemented to make it complete.

21. This Court goes through the above legal analysis to show why it disagrees with the Defendant that the evidentiary record before this Court is necessarily and automatically limited to just the Administrative Record and why the Plaintiff is not necessarily and automatically precluded from conducting any discovery into the collateral issue of conflict of interest, bias, or procedural unfairness. Having found the Plaintiff not precluded from testing the completeness of the Administrative Record or the fairness of the decision-making process, this Court turns next to the specific requests for discovery in dispute. Although an ERISA plaintiff may have some latitude in exploring such collateral issues, such requests must be narrowly tailored to that end. This Court reviews the particular requests at issue to see which ones are narrowly tailored to the permitted purpose.

## DISCUSSION

22. This Court begins by noting that the Plaintiff does articulate concrete reasons for wanting to explore the potential of conflicted or biased decision-making beyond just the simple fact of the inherent structural conflict of interest. The Plaintiff points to at least two specific irregularities that suggest biased decision-making. This Court finds some of the requests narrowly tailored to that end. Some of the requests

permissibly seek information related to procedural irregularities or to completing the record.

23. Request for Production No. 9 seeks "telephone messages, notation slips, or other recording of telephone calls to or from anyone involved in the handling of Plaintiff's claim, except for privileged materials." In its full extent this request is overbroad. This Court grants this request only to the extent that it seeks such information informative of the vocational analyst's note of November 6, 2015 regarding the claim manager's request for clarification of the Plaintiff's job duties. This Court also grants Request for Production No. 16 for those sections of the Dictionary of Occupational Titles on which the vocational analyst based his/her reports.

24. Request for Production No. 14 seeks "any and all contracts, correspondence or agreements between RRS and Defendant." RRS is the company, Reliable Review Services, whom the Defendant solicited late in the decision-making process to find it a medical advisor and who provided the Defendant with Dr. Polanco. As currently worded it is overbroad. This Court grants it only to the extent it relates to the solicitation of a medical advisor for the Plaintiff's claim. This Court grants Interrogatory No. 12 to the extent it seeks how much the Defendant paid RRS for work done on the Plaintiff's claim.

25. Request for Production No. 21 seeks "any reports prepared by Frank D. Polanco from 2013 to present relating to an insured of Aetna under a long term and/or short term disability plan." The Plaintiff argues that the Defendant often uses Dr. Polanco, and that Dr. Polanco's reports are similarly worded and simply repeat the claim denial language. This Court grants this request. For the same reason this Court grants Interrogatory No. 13 in part.

26. Interrogatory No. 4 asks the Defendant to identify all medical, vocational, or occupational professionals who rendered a report or opinion to the Defendant about the Plaintiff's claim. This includes full identification of Nurse Hoehne who is mentioned in the denials but for whom the Plaintiff knows little about. This Court grants this request. This Court also grants Interrogatory No. 9 which seeks the compensation schemes for the specific employees who handled the Plaintiff's claim. However this Court grants this request that the compensation schemes be produced in a general format, without specific employee identification. In other words the Defendant should not specifically link a compensation scheme to an individual employee. Until the Plaintiff can articulate a specific need for this information---beyond the inherent structural conflict of interest---this Court seeks to protect the privacy of those

third party employees. For now it suffices to know in a general way the schemes that the Defendant used to compensate those who worked on the Plaintiff's claim.

27. This Court denies most of the Plaintiff's Request for Admissions in dispute since they concern arguments to be made on the merits. The exception is Request for Admission No. 8 which in effect asks whether a particular person had the authority to override the first claim manager's recommendation. This Court grants Request for Admission No. 8. This Court also grants Interrogatory No. 1 and No. 3 to the extent they seek the identity of those who played a decision-making role in the handling of the Plaintiff's claim.

28. Lastly this Court grants Interrogatory No. 5 regarding the amount of premiums that the Plaintiff (or his employer on his behalf) paid for the policy. While it may not be relevant at the merits stage, it may become relevant at the final judgment stage should the Plaintiff prevail.

29. This Court denies the Plaintiff's various requests for all of the guidelines, manuals, etc., that the Defendant has for processing and deciding a disability claim. The governing standard by which the Defendant must decide the Plaintiff's claim is established by law. The exception is Request for Production No. 20. This Court grants that request in part to the

extent that it seeks the Defendant's standard operating procedures, guidelines, and claim handling manuals regarding the subject matters of soliciting and using vocational analyst reports, soliciting and using reports of medical advisors (such as Dr. Polanco), and the use of "specialty matched opinions". These are the claims handling procedures and guidelines at issue here in this case.

30. For those discovery requests that this Court denies, this Court does so because they are not narrowly tailored to a particular issue in this case. Should there later develop a specific need for such information, then the Plaintiff may have leave to propound a more specific request.

## CONCLUSION

31. At issue here is what discovery is relevant to this case. There is some latitude for discovery. The Plaintiff articulates a need for discovery, and this Court endeavors to limit that discovery to what is narrowly tailored to the issues. This Court notes that it is permitting a narrower range of discovery than what the above cited cases permitted. What is relevant for discovery is an issue distinct from what this Court may consider in its review of the merits of the claim denial under the governing standard of review. Whether any of this

discovery may be considered at the time of the merits analysis is an issue left for a later time.

It is therefore,

**ORDERED AND ADJUDGED** that the Motion to Compel is **GRANTED in part**. This Court breaks down the relief as follows: Request for Production Nos. 9, 14 & 20 and Interrogatory Nos. 1, 3, 9, 12 & 13 are granted in part to the extent explained above. Request for Production Nos. 16 & 21; Interrogatory Nos. 4 & 5; and Request for Admission No. 8 are granted in full. The Defendant shall produce all responsive discovery by **FRIDAY, MARCH 17, 2017**. All of the other discovery requests are denied.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 3rd day of March, 2017.

```
_____
FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE
```

cc:   Gregory L. Denes, Esq.
      Jonathan M. Fordin, Esq.